[Crim. No. 21598. First Dist., Div. Two. July 2, 1981.]

THE PEOPLE, Plaintiff and Appellant, v.
NADINE HARPER, Defendant and Respondent.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, Gloria F. DeHart, Thomas A. Brady and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Appellant.

Thomas J. Ferrito for Defendant and Respondent.

OPINION

**TAYLOR, P. J.**—On this appeal by the People from an order granting defendant Harper's pretrial nonstatutory motion to dismiss an information charging her with two felony counts of welfare fraud pursuant to former Welfare and Institutions Code section 11483, subdivision (2), the contentions are that: 1) there is no requirement in welfare fraud cases that the People must demonstrate compliance with the second part of the two-pronged procedure for restitution mandated by *People v. McGee* (1977) 19 Cal.3d 948 [140 Cal.Rptr. 657, 568 P.2d 382]; and 2) there is no requirement that a reasonable time pass before a criminal welfare fraud complaint can be filed after a demand for restitution has been made. For the reasons set forth below, we have concluded that the order must be affirmed.

The pertinent facts as revealed by the record are not in dispute. A civil demand letter notifying defendant of an overpayment of $6,324 and requesting discussion was mailed on April 27, 1979, by the Department of Social Services (Department). On May 1, 1979, defendant agreed to repayments at the rate of $100 per month. A criminal complaint was executed on May 31, 1979, and filed on June 4, 1979. A civil complaint was filed in August 1979. Defendant allowed default judgment to be taken on the condition that it not be executed if she paid $100 per month. On April 29, 1980, defendant was charged by information with two counts of welfare fraud (Welf. & Inst. Code., § 11483, subd. (2)).

The record indicates that prior to the receipt of the civil demand letter, defendant had repaid $100 to the county food stamp program. The Department's representative, Ms. Harms, accepted defendant's statement that her budget would permit restitution payments of $100 a

month. At the time of the preliminary examination on April 17, 1980, defendant, although employed as a teacher, continued to be eligible for an AFDC grant of approximately $35 a month. Ms. Harms testified that defendant had faithfully honored her agreement to pay $100 a month.[1]

The district attorney admitted that: 1) no review or consideration of defendant's attempts at restitution had been made prior to the filing of the criminal complaint; and 2) criminal complaints were filed in welfare fraud causes involving amounts such as the $6,000 here involved.

The court below concluded that although the civil demand letter satisfied the first prong of *McGee*, the People's admitted failure to consider and evaluate that defendant's efforts provided a sufficient ground for the granting of defendant's motion pursuant to the second prong of *People* v. *McGee, supra*, 19 Cal.3d 948, 965.

In *People* v. *McGee, supra*, our Supreme Court reviewed the purpose of Welfare and Institutions Code section 11483, subdivision (2).[2] The court held that the Legislature intended that the restitution requirement of subdivision (2) be given a mandatory effect and that the state could

---

[1]Apparently defendant has continued to do so during the pendency of this appeal.

[2]At the time here pertinent, the statute, so far as pertinent, read as follows: "Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall be punished as follows: . . . . .

"(2) If the amount obtained or retained is two hundred dollars ($200) or less, by imprisonment in the state prison, or by imprisonment in the county jail for not more than one year.

"*All actions necessary to secure restitution* shall be brought against persons in violation of this section as *provided in Sections 12250 and 12850*." (Italics added.)

Sections 12250 and 12850, as explained in *McGee, supra*, at page 958, footnote 3, were repealed in 1973, but their provisions reenacted in a new section 13200, which reads as follows: "Any person who, in order to secure for himself or another the aid provided in this chapter, makes a false statement under oath, shall be deemed guilty of perjury.

"Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device obtained aid under this chapter, he shall make restitution and all actions necessary to secure restitution may be brought against him.

"*It is the intent of the Legislature that restitution shall be sought by request, civil action, or other suitable means prior to the bringing of a criminal action.*" (italics added).

The court in *McGee* further explained, at 19 Cal.3d page 958, that its interpretation was based on an identical declaration of legislative intent also contained in the original 1970 enactment of the reference to sections 12250 and 12850 in section 11483.

not bring a criminal action for AFDC fraud until it had sought restitution (*People* v. *Jenkins* (1980) 28 Cal.3d 494, 508 [170 Cal.Rptr. 1, 620 P.2d 587]). The court, at page 956 of 19 Cal.3d, emphasized that the Legislature acted in the light of the unique circumstances of those receiving welfare benefits and the fact that since welfare benefits provided only the most minimum standard of living, fraud was often committed simply to obtain food and common household items viewed as necessities by most members of our society. The court then (at p. 965) mandated a two-pronged "case-by-case" approach for restitution procedures: 1) to give the defendant an opportunity to comply with the demand for restitution; and 2) to give the prosecution an opportunity to evaluate the case in the light of the repayment. The court further held (at pp. 967-968) that a claim of defective compliance must be raised and resolved in the trial court by a pretrial nonstatutory motion to dismiss. Where, as here, the accusation relates to a felony violation, the procedural defense is properly determined by the superior court (*Robinson* v. *Municipal Court* (1979) 92 Cal.App.3d 409, 411 [154 Cal.Rptr. 792]).

Here, the parties agree that the first prong of the restitution requirement of *McGee* had been met by the civil demand letter.[3] The controversy focuses on when and how the People must demonstrate their compliance with the second prong of *McGee*.

The purposes underlying the demand requirement of section 11483 are: 1) to insure that enforcement officials make a case-by-case determination of whether the state's interest could be adequately served by obtaining restitution or by also proceeding with criminal prosecution; and 2) to protect defendant by permitting her an opportunity to make restitution in cases where there are mitigating circumstances (*People* v. *Jordan* (1978) 86 Cal.App.3d 529, 536 [150 Cal.Rptr. 334]; *People* v. *McGee, supra,* 19 Cal.3d, p. 965; *People* v. *Williams* (1980) 106 Cal. App.3d 15, 21 [164 Cal.Rptr. 767]).

---

[3]The second sentence of subdivision (2) was amended in 1979 to read as follows, so far as pertinent: "*When the allegation is limited to failure to report not more than two thousand dollars ($2,000) of income or resources, or the failure to report the presence of an additional person or persons in the household,* all actions necessary to secure restitution shall be brought against persons in violation of this section as provided in Sections 12250 and 12850. *Such action for restitution may be satisfied by sending a registered letter requesting restitution to the last address at which the person was receiving public assistance.*" (Italics added.)

The portions italicized above were added by Statutes of 1979, chapter 1170, section 12, and chapter 1171, section 1, and became effective on January 1, 1980. Accordingly, we are not concerned with the interpretation of the 1979 amendment.

■ As indicated above, the trial court's order was predicated on the uncontroverted showing made at the hearing on defendant's motion that the enforcement officials had failed to make the requisite case-by-case determination. Defendant adduced uncontroverted evidence that the enforcement officials had accepted her statement that $100 a month in restitution was all that her budget would permit. In addition, although employed as a teacher, she was still entitled to AFDC of $35 a month. The district attorney also stated that criminal complaints were filed routinely in welfare fraud cases involving amounts, such as the instant one. As the trial court noted in its well thought out memorandum of decision, permitting the People to show only that restitution had been requested, and not more, leads to the "mechanical compliance" condemned by *McGee*. We agree.

■ We also agree with the People that they do not have the burden of introducing evidence at the preliminary hearing that there has been compliance with both prongs of *McGee*. However, where, as here, the defendant presented uncontroverted evidence that the case-by-case consideration requirement had not been met, the burden shifts and the People may be required to rebut defendant (cf. *People* v. *Crudgington* (1979) 88 Cal.App.3d 295 [151 Cal.Rptr. 737]). Here, the People did not do so and the court's order was proper on that ground alone.[4] We also note that here, as in *People* v. *Jordan, supra*, 86 Cal.App.3d 529, 537-538, the prosecutor, rather than follow the admonition of the trial court to evaluate the defendant's case in conformance with the second prong of *McGee*, elected to resist the statutory mandate and prosecute this appeal.

We are constrained, however, to attempt to illuminate the meaning of the term "case-by-case" and attempt to set forth some possible guidelines.

A "case-by-case" determination, by its very terms, implies that what is required depends on the facts of each case. For example, if a demand

[4]We note that in *People* v. *Jordan, supra*, 86 Cal.App.3d 529, 534, at the time of the initial investigation, defendant fled the state and later returned using a different name and social security number. An investigator located her, handed her a demand letter, and orally advised her of the full amount due, about $5,000. She was arrested and subsequently provided a personal check for the full amount. The court authorized acceptance of the check and dismissed in the interests of justice (Pen. Code, § 1385). In affirming the dismissal, the court, relying on *McGee, supra*, held that failure to seek restitution prior to bringing a criminal complaint constituted an independent basis for dismissal.

for restitution is made, and the defendant does not respond or make any effort, then no more might be required. ■ If, however, a demand is made and the defendant responds, a reasonable delay may be appropriate, depending on other factors.[5]

Significantly here, defendant had agreed to make restitution before the criminal complaint was filed. Thereafter, she paid the amount agreed upon. The record also indicates that defendant was a teacher and conviction of any offense could result in the loss of her teaching credentials and position. (Ed. Code, §§ 44422, 44424.) Loss of defendant's position and her resulting eligibility for full AFDC payments are not in the long-run interest of the state. The federal Social Security Act that is the source of AFDC funds and our Welfare and Institutions Code (which set forth the procedures for administration) both include the purpose of helping recipients attain maximum economic independence (J. tenBroek, Family Law and the Poor (1971) pp. 209-210; Welf. & Inst. Code, §§ 10000, 10001, 11205). Thus, there were other facts to consider, including the likelihood that defendant would continue to make the restitution payments as promised. If the People were concerned about the statute of limitations, other avenues, such as an agreement, could be explored to make certain that defendant repaid the full amount due; here, of course, there was also the civil judgment. A brief statement from the district attorney that all of the facts had been considered but prosecution was still in the best interests of the state would suffice.

We see no merit to the People's argument of interference with prosecutorial discretion, as whether the People have sought restitution relates not to the guilt or innocence of the accused, but to a statutory defect in the institution of prosecution. Further, even full restitution does not bar prosecution either for a violation of section 11483 or for perjury (*People v. Jenkins, supra*, 28 Cal.3d 494, 509).

As our Supreme Court recently reiterated in *Jenkins, supra*, at page 509, Welfare and Institutions Code section 11483 is special legislation. The legislative mandate for the limited protection afforded to recipients by the restitution requirement of the statute derives from the historic origin of our system of public aid that has long subjected recipients to

---

[5]For example, there could be positive points for facts such as residence, family or employment (cf. *Van Atta* v. *Scott* (1980) 27 Cal.3d 424, 434 [166 Cal.Rptr. 149, 613 P.2d 210]) and negative ones for repeated skipped payments.

an array of public control and special rules (J. tenBroek, Family Law and the Poor, *supra*, at pp. 145-147).

The order appealed from is affirmed.

Miller, J., and Smith, J., concurred.

A petition for a rehearing was denied July 31, 1981, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied September 2, 1981.