[No. B004597. Second Dist., Div. Five. Feb. 6, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN WOODS, Defendant and Appellant.

COUNSEL

Seymour I. Cohen for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Anderson and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ASHBY, Acting P. J.**—By nonjury trial appellant John Woods was found guilty as charged on 12 counts of fraudulent receipt of aid for children in violation of Welfare and Institutions Code section 11483 and 12 counts of forgery in violation of Penal Code section 470. He was sentenced to a term of three years in the state prison.[1]

---

[1]The court sentenced appellant to an upper term of three years on count I, welfare fraud, and to concurrent terms on all the other counts of welfare fraud. As to the forgery counts the court sentenced appellant to a midterm of two years and stayed execution of the sentences pursuant to Penal Code section 654.

■ In a massive welfare fraud scheme, appellant aided and abetted his wife, Dorothy Woods, in fraudulently obtaining $377,000 in aid for families with dependent children. Dorothy Woods applied for and obtained aid under 12 different fictitious names. Appellant assisted the scheme in various ways. He was a landlord, and some of his tenants were requested to allow the welfare checks in fictitious names to be mailed to their mailboxes, where appellant would pick them up and turn them over to Dorothy Woods. Dorothy Woods forged the fictitious names on the checks, and in many cases appellant cashed these checks for Dorothy, coindorsed them, and deposited them in his bank accounts.

Citing his own version of the facts and failing to cite all the prosecution evidence against him, appellant argues the evidence is insufficient to support the judgment. This argument is summarily rejected, since the circumstances amply warranted the inference that appellant knew of and intentionally participated in the scheme, and appellant's testimony (claiming that he thought all the checks were for friends and relatives of his wife's, that his wealthy wife was entitled to welfare, and that there was nothing suspicious about the names and addresses on the checks and the procedure of sending them to his apartment buildings where no such persons lived) was patently incredible and was rejected by the trial court. Few defendants indeed would ever be convicted if their testimony were received as the gospel truth. (*People v. Farris* (1977) 66 Cal.App.3d 376, 383 [136 Cal.Rptr. 45].) Substantial evidence clearly supports the judgment (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]), and we proceed directly to the legal issues raised by appellant.

## RESTITUTION

■ Citing *People v. McGee* (1977) 19 Cal.3d 948 [140 Cal.Rptr. 657, 568 P.2d 382], appellant moved to dismiss the charges on the ground that appellant did not receive notice of a demand for restitution prior to initiation of the criminal prosecution. The trial court properly denied this motion on the basis of the 1979 amendment to Welfare and Institutions Code section 11483. When this action was filed, section 11483 read as follows: "Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall be punished as follows: [¶] (1) If the amount obtained or retained is two hundred dollars ($200) or less, by imprisonment in the county jail for a period of not more than six months, a fine of not more than five hundred dollars ($500), or by both such imprisonment and fine. [¶] (2) If the amount obtained or retained is more than two hundred dollars ($200), by imprisonment in the state prison, or by imprisonment in the county jail for not more than one year. [¶]

*When the allegation is limited to failure to report not more than two thou-sand dollars ($2,000) of income or resources, or the failure to report the presence of an additional person or persons in the household, all actions necessary to secure restitution shall be brought against persons in violation of this section as provided in Sections 12250 and 12850. Such action for restitution may be satisfied by sending a registered letter requesting resti-tution to the last address at which the person was receiving public assist-ance."* (Stats. 1979, ch. 1171, § 1, p. 4568, italics added.)

As recognized by the California Supreme Court in *People* v. *Sims* (1982) 32 Cal.3d 468, 475, footnote 4, [186 Cal.Rptr. 77, 651 P.2d 321] this last paragraph severely limited the 1977 *McGee* interpretation that the prose-cution's failure to make a prior demand for restitution was grounds for dismissal of a criminal prosecution. "Section 11483 was amended in 1979 so that *now an attempt to secure restitution prior to bringing a criminal action is only required where a person is charged with failing to report not more than $2,000 of income or sources or failing to report the presence of one additional person or persons in the household." (People v. Sims, supra,* italics added.)[2] Appellant's fraudulent scheme to obtain $377,000 welfare aid in the name of fictitious persons is obviously not the type of case to which the requirement of a prior demand for restitution now applies.[3]

## MULTIPLE COUNTS

 The 12 counts of welfare fraud and the 12 counts of forgery of which appellant was convicted represent the 12 different accounts fraudulently opened by Dorothy Woods under 12 different fictitious names. In this con-text appellant's contention that all the counts should have been consolidated into one count is absurd. He erroneously relies upon cases involving the circumstances under which a series of petty thefts may, or must, be cumu-lated to establish grand theft. (See *People* v. *Bailey* (1961) 55 Cal.2d 514, 519 [11 Cal.Rptr. 543, 360 P.2d 39]; *People* v. *Robertson* (1959) 167 Cal.App.2d 571, 576 [334 P.2d 938].) Here the prosecution did not charge a separate count for each and every welfare check which was cashed. (Cf. *People* v. *Richardson* (1978) 83 Cal.App.3d 853, 866 [148 Cal.Rptr. 120].) The prosecution had already consolidated the charges considerably by com-bining them into 12 groups rather than charging over 100 counts, one for

[2]*People* v. *Durrett* (1985) 164 Cal.App.3d 947 [210 Cal.Rptr. 874], cited by appellant, is not to the contrary. That case involved less than $2,000 and allegations about an additional person in the household. (*Id.,* at pp. 951, 955-956, fn. 4.)

[3]Appellant suggests that "some of the incidents occurred prior to 1980" and that the prior law might be applicable to those incidents. There is no merit to this suggestion since it was alleged that appellant and Dorothy Woods continued to receive the aid through December of 1980. (See *People* v. *Packard* (1982) 131 Cal.App.3d 622, 627 [182 Cal.Rptr. 576].)

each check cashed.[4] The use of 12 different names to establish 12 different fictitious accounts clearly supports charging 12 counts. The court was not required to consider this as one theft "pursuant to one intention, one general impulse, and one plan." (*People* v. *Bailey, supra,* 55 Cal.2d at p. 519.) Not only was multiple conviction proper; we held in *People* v. *Williams* (1980) 106 Cal.App.3d 15, 20 [164 Cal.Rptr. 767], involving similar circumstances of welfare fraud, that even multiple punishment (including consecutive sentencing) for perjury would not violate Penal Code section 654.

FORGERY

■ Citing the principle that where a general statute and a special statute cover the same criminal conduct, prosecution under the general statute is precluded, appellant argues he could not be convicted of forgery (Pen. Code, § 470) because his conduct was specifically covered by the statute on welfare fraud, Welfare and Institutions Code section 11483. Based on the reasoning of the California Supreme Court in *People* v. *Ruster* (1976) 16 Cal.3d 690, 698-699 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269], involving an analogous comparison of unemployment insurance fraud with forgery, and *People* v. *Jenkins* (1980) 28 Cal.3d 494, 502-503 [170 Cal.Rptr. 1, 620 P.2d 587], we conclude this contention is correct.

In *Ruster* the defendant obtained unemployment insurance benefits under a false name and social security number. Unemployment Insurance Code section 2101 made fraudulent misrepresentation to obtain unemployment benefits a misdemeanor. Instead, however, the defendant was prosecuted and convicted of grand theft and 14 counts of forgery. The Supreme Court held that the unemployment insurance fraud code section was a special statute which precluded prosecution for either grand theft or forgery. (*People* v. *Ruster, supra,* 16 Cal.3d at pp. 695-699.) The People argued that since forgery was not an express element of making false representations to obtain unemployment insurance, the special statute did not supplant the general. The Supreme Court rejected this contention. The court noted first that in *People* v. *Swann* (1963) 213 Cal.App.2d 447, 451 [28 Cal.Rptr. 830], the People had argued that a stolen credit card could be "used," in violation of Penal Code section 484a without necessarily committing forgery. The

---

[4]In fact, even the cases cited by appellant draw a distinction between theft and forgery, holding that each forgery of a document can support a separate count. (*People* v. *Richardson, supra,* 83 Cal.App.3d at p. 853; *People* v. *Neder* (1971) 16 Cal.App.3d 846, 854 [94 Cal.Rptr. 364]; *People* v. *Gayle* (1927) 202 Cal. 159, 162-163 [259 P. 750].) The forgery convictions raise a different issue, however, which is discussed *post.*

*Swann* court had stated, "Certainly the Legislature in enacting section 484a, Penal Code, contemplated false or unauthorized signatures on credit invoices by parties engaged in the misdemeanor use of credit cards . . . since such signatures are required of credit card users in the customary use of such cards." The Supreme Court in *Ruster* concluded, "Here, too, the Legislature unquestionably contemplated that the special statute might be violated by means of forgery. Indeed, applying for aid under a false identity, which entails signing eligibility questionnaires and pay certification cards with a false name, is apparently one of the most common forms of unemployment insurance fraud." (*People* v. *Ruster, supra,* 16 Cal.3d at p. 699.) This approach was reiterated by the California Supreme Court in *People* v. *Jenkins, supra,* 28 Cal.3d at page 502, where the court stated, "If it appears from the entire context that a violation of the 'special' statute will necessarily or commonly result in a violation of the 'general' statute, the *Williamson [In re Williamson* (1954) 43 Cal.2d 651, 654 (276 P.2d 593)] rule may apply even though the elements of the general statute are not mirrored on the face of the special statute."

Turning to the instant case the People argue that "appellant aided his wife's fraud by providing addresses for her to have her checks sent and by picking up those checks for her. . . . It was unnecessary for the commission of the welfare fraud for appellant to utter fraudulently obtained checks." This argument is essentially similar to the one rejected in *Jenkins, Ruster,* and *Swann.* After applying for welfare aid under a fictitious name, a person would, in order to "obtain" the benefits (Welf. & Inst. Code, § 11483) commonly or necessarily commit forgery by indorsing the county checks made payable in the fictitious name. In helping his wife to cash the checks appellant was aiding and abetting her obtaining welfare benefits by fraudulent means, and we are not persuaded by respondent's argument that appellant committed forgery which was independent of that purpose.

There can be no doubt that appellant's role, which the trial court described as "laundering" the money, greatly facilitated the success of the scheme. To reflect the increased harm to society caused by appellant's participation, it might well have been appropriate to charge conspiracy in addition to welfare fraud. (See *People* v. *Legerretta* (1970) 8 Cal.App.3d 928, 933-934 [87 Cal.Rptr. 587].) But a comparison of possible punishments shows that the question whether appellant could be prosecuted for forgery or conspiracy makes little practical difference. Typically the issue whether a special criminal statute supplants a more general criminal statute arises where the special statute is a misdemeanor and the prosecution has charged a felony under the general statute instead. (E.g., *People* v. *Ruster, supra,* 16 Cal.3d at p. 693; *People* v. *Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr.

724, 462 P.2d 580]; *People* v. *Swann, supra,* 213 Cal.App.2d at p. 449.) Such prosecutions raise a genuine issue whether the defendant is being subjected to greater punishment than specified by the Legislature, and the basic question for the court to determine is whether the Legislature intended that the more serious felony provisions would remain available in appropriate cases. (*People* v. *Jenkins, supra,* 28 Cal.3d at pp. 506-508 [legislative intent held clear that Welfare and Institutions Code section 11483 does not preclude prosecution for perjury under Penal Code section 118].)

We note that after the *Ruster* decision the Legislature amended Unemployment Insurance Code section 2101 to overcome *Ruster* by providing in a new subdivision (b) that "[n]othing in this section shall be construed to preclude the applicability of Section 470 of the Penal Code to any acts or omissions which violate this section." The Legislature has made no such exception to Welfare and Institutions Code section 11483. The difference may be explainable by the fact that whereas the unemployment insurance fraud section is a misdemeanor, Welfare and Institutions Code section 11483 has long contained felony provisions of its own, comparable in seriousness to Penal Code provisions for theft or forgery. (See *People* v. *Faubus* (1975) 48 Cal.App.3d 1, 6 [121 Cal.Rptr. 167]; *Gasaway* v. *Superior Court* (1977) 70 Cal.App.3d 545, 550 [139 Cal.Rptr. 27]; Pen. Code, § 473.)[5] Thus, although the statements of the Supreme Court in *Ruster* and *Jenkins* compel the conclusion that a forgery prosecution is not available in this case, the practical reason is not because a forgery prosecution would impermissibly elevate the punishment, but rather would be superfluous. In light of the felony provisions of the special statute, there is simply not much point in also charging appellant with 12 counts of forgery, or of conspiracy. This is illustrated by appellant's sentence in this case. Appellant received his state prison sentence for welfare fraud; his sentences for forgery were stayed pursuant to Penal Code section 654. (See fn. 1, *ante.*) The trial court carefully considered appellant's sentence, and even in light of our conclusion that the counts relating to forgery should be reversed, we see no reasonable probability that a different sentence would be imposed if the matter were remanded for resentencing. We shall modify the judgment accordingly.

The judgment of conviction is reversed as to forgery counts 3, 7, 10, 14, 17, 20, 24, 28, 31, 35, 38, and 40. The judgment as to sentence is modified

---

[5]Due to a reorganization of code sections, Welfare and Institutions Code sections 11482, 11482.5, 11483, and 11483.5 now make cross-reference to the provisions of Welfare and Institutions Code section 10980.

by striking those counts. As so modified and in all other respects, the judgment is affirmed.

Hastings, J., and Eagleson, J., concurred.

A petition for a rehearing was denied March 5, 1986, and appellant's petition for review by the Supreme Court was denied May 21, 1986.