[No. E015164. Fourth Dist., Div. Two. Mar. 11, 1996.]

THE PEOPLE, Plaintiff and Appellant, v.
THERESA PRESTON, Defendant and Respondent.

## COUNSEL

Dennis Kottmeier, District Attorney, Joseph A. Burns, Deputy District Attorney, and Dennis Stout for Plaintiff and Appellant.

Elizabeth A. Barranco, under appointment by the Court of Appeal, for Defendant and Respondent.

## Opinion

**HOLLENHORST, Acting P. J.**—The trial court dismissed a welfare fraud prosecution under Welfare and Institutions Code sections 11483 and 10980[1] because it found that a demand for restitution had not been made prior to the commencement of criminal proceedings. The trial court relied on *People* v. *McGee* (1977) 19 Cal.3d 948 [140 Cal.Rptr. 657, 568 P.2d 382] and its progeny, including this court's decision in *People* v. *Jordan* (1978) 86 Cal.App.3d 529 [150 Cal.Rptr. 334].

The People appeal, contending that a prior demand for restitution is no longer necessary in cases of welfare fraud under these cases because of the 1984 amendments to section 11483, and the enactment of section 10980 at that time.

We agree that the older cases are no longer controlling following the 1984 legislation. Accordingly, since the trial court erroneously assumed that a prior demand was required, we reverse its order granting defendant's motion to dismiss the action.

### Facts and Procedural History[2]

An eligibility worker for the San Bernardino County Department of Social Services testified at the preliminary hearing that defendant, Theresa Preston, received welfare benefits from 1991 to 1993. Benefits were awarded on the basis of an application from defendant which claimed that defendant's husband was not residing in her home. The statements were repeated on an application filed on August 5, 1992, and on several monthly eligibility reports.

A welfare fraud investigator investigated information that Mr. Preston was actually living with defendant, and that he had unreported employment income. She also testified that she read defendant a demand for restitution immediately before she arrested defendant. The amount of the alleged loss was approximately $40,000.

Two neighbors also testified that they believed that Mr. Preston was living in defendant's home during the relevant period.

Defendant was charged with welfare and food stamp fraud in violation of section 10980, subdivision (c)(2), a felony, and six counts of perjury (Pen.

---

[1]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2]The facts, which are relatively undisputed, are taken from the transcript of the preliminary hearing.

Code, § 118) arising from the allegedly false statements on her applications and monthly eligibility reports.

Defendant filed a nonstatutory motion to dismiss the information on grounds that the state was required to seek restitution prior to bringing a criminal action, and that it had failed to do so. As noted above, the trial court granted the motion and dismissed the action.

## SECTIONS 10980 AND 11483

Since its enactment in 1984, section 10980 has specified penalties for welfare fraud. Defendant was charged under subdivision (c), which provides penalties for obtaining benefits by false statements. Nothing in section 10980 requires a demand for restitution prior to filing charges, or at any other time.

Section 11483 provides: "Except as specified in Section 11483.5, whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall be subject to prosecution under the provisions of Chapter 9 (commencing with Section 10980) of Part 2. [¶] When the allegation is limited to failure to report not more than two thousand dollars ($2,000) of income or resources, or the failure to report the presence of an additional person or persons in the household, all actions necessary to secure restitution shall be brought against persons in violation of Section 10980. The action for restitution may be satisfied by sending a registered letter requesting restitution to the last address at which the person was receiving public assistance."

It will be noted that nothing in the present statute requires that the restitution demand be made prior to commencement of criminal proceedings. Since defendant finds such a requirement in the cases, we turn to them.

### PEOPLE V. MCGEE AND OTHER PRE-1984 CASES

In *In re Sands* (1977) 18 Cal.3d 851 [135 Cal.Rptr. 777, 558 P.2d 863], our Supreme Court noted that section 11483 then provided that " 'All actions necessary to secure restitution shall be brought against persons in violation of this section as provided in Sections 12250 and 12850.' " Since former sections 12250 and 12850 stated the legislative intent that restitution be sought prior to the bringing of the criminal action, the Supreme Court found the requirement to be part of section 11483, notwithstanding the repeal of those two sections in 1973. (18 Cal.3d at pp. 853-854, & fn. 1.)

Eight months later, the Supreme Court resolved an issue left open in *Sands*, i.e., whether the failure to seek restitution prior to the institution of a criminal action was a fatal defect when the issue was raised on direct appeal. (*People* v. *McGee, supra*, 19 Cal.3d 948, 954.) The court held that the statutory provision was mandatory, and "[u]nder section 11483, the state is required to seek restitution prior to bringing a criminal action and enjoys no discretion to refrain from complying with the dictates of the statute." (*Id.*, at p. 961.) The court again found that the 1973 repeal of sections 12250 and 12850 was no obstacle, particularly since the substance of the restitution requirement was continued in section 13200.[3]

The court went on to find that the demand requirement was intended to provide protection for individuals accused of welfare fraud, that it should be given mandatory effect, and that failure to follow the prescribed procedure was a basis for challenging the subsequent criminal prosecution. (*People* v. *McGee, supra*, 19 Cal.3d 948, 961-966.) The court found that the requirement was intended to "insure that enforcement officials make a case-by-case determination of whether the state's interest is adequately served simply by obtaining restitution, or whether criminal prosecution is in fact warranted. The 1957 legislation affords this limited protection to those accused of welfare fraud by requiring the state initially to seek restitution in all cases, while leaving the prosecutor free to determine whether or not criminal proceedings should thereafter be pursued." (*Id.*, at p. 965.)

This court had occasion to discuss the issue in 1978. In *People* v. *Jordan, supra*, 86 Cal.App.3d 529, the People appealed a dismissal entered on grounds that the state had failed to seek restitution from the defendant prior to bringing the criminal action. We considered whether the dismissal was in compliance with *McGee* and agreed with the trial court that "*McGee* contemplates something more than mechanical compliance with the statutory mandate to request restitution: namely, that the person accused of fraud should be given an opportunity to make restitution, and if restitution is made, then the prosecutor should be required to reconsider the case in light of the fact that restitution has been made to determine whether prosecution is in fact warranted." (*Id.*, at p. 535.) Accordingly, we held that "[a] decision to arrest and prosecute made prior to the making of the demand for restitution does not comport with the legislative intent as expounded by the Supreme Court in *McGee*." (*Id.*, at p. 536.)

Other cases in the period from 1977 to 1984 relied on *McGee* to reach similar conclusions. In 1980, our Supreme Court found that the legislative intent to require a request for restitution had been first manifested in 1957,

---

[3]Section 13200 was itself repealed in 1981. (Stats. 1981, ch. 69, § 23, p. 177.)

and "was reiterated in the 1970, 1977, and 1979 amendments to section 11483." (*People* v. *Jenkins* (1980) 28 Cal.3d 494, 509 [170 Cal.Rptr. 1, 620 P.2d 587].) Accordingly, the court held that, although prosecutions for perjury in connection with aid to families with dependent children fraud could proceed either under section 11483 or Penal Code section 118, a prosecution for perjury under Penal Code section 118 could not be commenced until the restitution requirement set forth in section 11483 had been satisfied. (28 Cal.3d at p. 509.)

Two years later, in 1982, our Supreme Court considered whether an administrative hearing decision exonerating defendant of welfare fraud collaterally estopped a criminal action for the same alleged misconduct. (*People* v. *Sims* (1982) 32 Cal.3d 468, 473 [186 Cal.Rptr. 77, 651 P.2d 321].) In finding collateral estoppel, the court noted in passing that section 11483 required the state to seek restitution before initiating criminal proceedings in certain cases. (32 Cal.3d at p. 489.)

Appellate court decisions in this period of time followed *McGee* in various contexts. For example, in *People* v. *Williams* (1980) 106 Cal.App.3d 15 [164 Cal.Rptr. 767], the court rejected a contention that prosecution was barred for failure to make a prior demand for restitution. In that case, the state had sent letters demanding restitution and the court held that these efforts were sufficient to comply with the demand requirement. (*Id.*, at p. 21.)

In *People* v. *Harper* (1981) 121 Cal.App.3d 283 [175 Cal.Rptr. 146], the court considered whether the restitution requirement had been met. It said: "The purposes underlying the demand requirement of section 11483 are: 1) to insure that enforcement officials make a case-by-case determination of whether the state's interest could be adequately served by obtaining restitution or by also proceeding with criminal prosecution; and 2) to protect defendant by permitting her an opportunity to make restitution in cases where there are mitigating circumstances [citations]." (*Id.*, at p. 287.) The court upheld dismissal of the charges on grounds that the prosecutors had failed to show that they had made a case-by-case determination. (See also *People* v. *Crudgington* (1979) 88 Cal.App.3d 295 [151 Cal.Rptr. 737]; *People* v. *Batten* (1978) 86 Cal.App.3d 848 [150 Cal.Rptr. 567]; and *People* v. *Davis* (1978) 85 Cal.App.3d 916 [149 Cal.Rptr. 777].)

THE 1984 AMENDMENTS TO SECTION 11483

Prior to 1984, the varying texts of section 11483 supported the conclusion that the Legislature, by reference to the repealed sections 12250 and 12850,

intended to continue to incorporate the prior demand requirement into the statute.[4] (See, e.g. Stats. 1983, ch. 1092, § 422, p. 4088.)

In 1984, the Legislature enacted section 10980 and amended section 11483 into its present form. Prior to this change, the crime of "welfare fraud" was punishable under a variety of different statutes, including sections 11054, 11482, 11483 and 14014, as well as Penal Code sections 396, 396.5 and 484. As a result, the same fraudulent act frequently violated several statutes, and was chargeable under more than one of these statutes. The necessity to file complaints under each separate statute led to confusion and unnecessary filing of complaints. (Health & Welf. Agency, Dept. Soccial Services, Enrolled Bill Rep. (Sept. 17, 1984).)[5]

The purpose of section 10980 was to create administrative efficiencies in investigating and prosecuting fraud cases by creating a specific welfare fraud statute under which a single fraudulent act involving more than one welfare program could be prosecuted. (Assem. Office of Research, 3d reading analysis of Sen. Bill No. 2171 (1983-84 Reg. Sess.) p. 3.) Thus, the purpose of the Legislature in enacting section 10980 was to consolidate the various welfare fraud provisions into that section and to eliminate the need to file multiple actions against a recipient who obtained various types of aid by committing a single fraudulent act. (Assem. Human Services Com., Minority Rep. (Aug. 28, 1984).)

In accordance with this purpose, the penal provisions of section 11483 were deleted from that section and reenacted in section 10980. The prior reference to sections 12250 and 12850, which had been held to incorporate the prior demand requirement in section 11483, was deleted and replaced by a reference to section 10980.

The remaining, and current, text of section 11483 does not contain any criminal proscriptions, but merely requires that restitution be sought in cases of failure to report not more than $2,000 in income or resources, or the failure to report the presence of an additional person in the household. It specifies that this requirement may be satisfied by the mailing of a registered letter to the last address, but it does not specifically require the mailing or other demand prior to the filing of an action under section 10980.

Appellant therefore contends that the prior demand requirement has been deleted by the Legislature, saying "one is compelled to conclude that the

---

[4]Appellant analyzes the various amendments to section 11483 prior to 1984. We find it unnecessary to conduct a similar analysis, as appellant's position ultimately depends on the intent and effect of the 1984 amendments.

[5]We take judicial notice of legislative materials obtained from the California State Archives.

1984 Legislature intended to remove section 11483 from the criminal sphere of welfare fraud and put it back into the civil realm where it had been in the first (1965) place."

## CASES AFTER THE 1984 AMENDMENTS TO SECTION 11483

None of the cases decided after 1984 discuss the argument that the 1984 amendments to section 11483 deleted the prior demand requirement.

In 1985, a conviction was reversed for failure to comply with the prior demand requirement. (*People* v. *Durrett* (1985) 164 Cal.App.3d 947 [210 Cal.Rptr. 874].) However, the conduct there occurred in 1982, and the 1984 amendments to section 11483 were not discussed. The court merely said: "The restitution requirement of section 11483 is a codification of legislative intent to provide protection for individuals accused of welfare fraud and not a codification of any constitutional requirement. Further, the restitution issue does not implicate jurisdiction." (*Id.*, at p. 953.) The court then held that the issue of failure to comply with the demand requirement could be asserted on appeal following a guilty plea. Applying *McGee*, the court found that a proper demand had been made. (*Id.*, at p. 956.)

Nine months later, *McGee* was cited in *People* v. *Tallagua* (1985) 174 Cal.App.3d 145, 151-152 [219 Cal.Rptr. 754].) That case involved a perjury conviction in which the defendant claimed he was denied equal protection because section 11483 required a prior effort to obtain restitution while the perjury statute did not require a prior effort to obtain a recantation of the perjured testimony. Relying on *McGee* and *Jenkins*, the court accepted the premise that a prior effort to obtain restitution must be made under either section 11483 or the perjury statute (Pen. Code, § 118), but rejected the equal protection argument.

*People* v. *Woods* (1986) 177 Cal.App.3d 327 [222 Cal.Rptr. 868], considered an argument that dismissal was required for failure to make a prior demand. (*Id.*, at p. 330.) The fraud there occurred in 1980, and the case was decided under the 1979 amendments to section 11483. (177 Cal.App.3d at p. 330.) The court held that the demand requirement did not apply to the fraud in that case, because the 1979 amendments limited the prior demand for restitution to cases of failing to report not more than $2,000 of income or the presence of an additional person in the household. (*Id.*, at p. 331.)

In *Madrid* v. *McMahon* (1986) 183 Cal.App.3d 151 [228 Cal.Rptr. 14], this court considered fraud which occurred in the period of 1979 to 1982. The person accused of the fraud filed a petition for writ of mandate to

compel an administrative hearing on the issue of whether she had fraudulently obtained overpayments. The issue on appeal was whether the administrative fair hearing process could be employed for the sole purpose of affecting collateral criminal proceedings. (*Id.*, at p. 157.) Considering the 1979 amendment to section 11483, we found that "after the decision in *McGee,* the Legislature amended section 11483 of the Welfare and Institutions Code to further limit the kinds of cases in which an attempt to obtain restitution would be required: 'Section 11483 was amended in 1979 so that now an attempt to secure restitution prior to bringing a criminal action is only required where a person is charged with failing to report not more than $2,000 of income or resources or failing to report the presence of one additional person or persons in the household.' (*People* v. *Sims, supra,* 32 Cal.3d 468, 475, fn. 4.)" (183 Cal.App.3d at pp. 157-158.) The argument was not made that the 1984 amendments had completely eliminated the prior demand requirement, and we did not consider the issue. We merely found that the case was not subject to the restitution attempt requirement, and there was therefore no legislative policy favoring an administrative determination of the fraud issue before commencement of criminal proceedings. (*Id.*, at p. 158.)

In *People* v. *Meyer* (1986) 183 Cal.App.3d 1150 [228 Cal.Rptr. 635], defendant pled guilty to welfare fraud occurring between 1981 and 1984 under section 11483. He appealed, alleging that the district attorney failed to bring an action for restitution prior to instituting criminal charges. The court quoted the pre-1984 text of section 11483, and rejected the claim under *Sims.* (*People* v. *Sims, supra,* 32 Cal.3d 468.)

The 1984 amendments were considered in *People* v. *Camillo* (1988) 198 Cal.App.3d 981 [244 Cal.Rptr. 286]. The issue in that case was whether obtaining more than $400 worth of welfare benefits by false representations for a number of consecutive months constituted a single felony or only a series of misdemeanors. The court held that the crime defined in section 10980 is a felony when the benefits are illegally obtained pursuant to one general scheme. It also held that classification of the crime as a felony was constitutional. (198 Cal.App.3d at p. 986.)

The conduct there occurred in 1984 and 1985. The penal provisions of section 11483 were still in effect at the commencement of the conduct, while section 10980 was in effect the remainder of the time. The court held the fact irrelevant to the basic issue of whether the Legislature intended persons in her position to suffer felony convictions.

In discussing the legislative history of the 1984 amendments, the court said: "In 1984, the Legislature rearranged the statutory scheme for welfare

fraud, effective on January 1, 1985. (Stats. 1984, ch. 1448.) Summarizing this enactment, the Legislative Counsel noted: 'Existing law provides for various criminal offenses concerning the receipt of, or the attempt to receive, aid under the Aid to Families with Dependent Children (AFDC) program and under the Food Stamp Program. [¶] This bill would modify these provisions by, among other things, applying these offenses to all aid programs, including the AFDC program, the Food Stamp Program, and county aid and relief programs.' (Legis. Counsel's Dig., Sen. Bill No. 2171 (1984 Reg. Sess.) Summary Dig., pp. 520-521.) [¶] In order to accomplish this objective the Legislature centralized the penalty provisions for welfare fraud into one statute, section 10980, and made it applicable to all welfare programs." (*People* v. *Camillo, supra,* 198 Cal.App.3d 981, 988; see also *People* v. *Ochoa* (1991) 231 Cal.App.3d 1413, 1420, fn. 2 [282 Cal.Rptr. 805].)

In another passage, the court says: "The Legislature obviously had multiple purposes when it enacted the 1984 amendments and one was to alter the punishment for welfare fraud. Indeed, it seems self-evident from the very fact that the prior statute governing punishment for welfare fraud has been amended that the Legislature intended to change the existing law." (*People* v. *Camillo, supra,* 198 Cal.App.3d 981, 991.)

However, the court continued to apply *McGee* without fully discussing whether it had been abrogated by the 1984 amendments. It said: "After the decision in *McGee,* the Legislature amended the restitution provisions of the law to require that restitution be requested before prosecution only with respect to persons who failed to report not more than $2,000 in income and resources, or the presence of additional persons in the household. (Stats. 1979, ch. 1170, § 12, p. 4566; Stats. 1979, ch. 1171, § 1, p. 4568. . . .) The fact that the Legislature limited *but did not abrogate* the restitution provisions of the law after the *McGee* interpretation is a clear indication that it intended to adhere to that interpretation in the circumstances where restitution is required." (*People* v. *Camillo, supra,* 198 Cal.App.3d 981, 994, italics added.) Thus, while not directly considering whether the 1984 amendments had abrogated *McGee,* the court assumed that they had not.

In the absence of any reasoning or stated authority, we find the statement that the Legislature did not abrogate *McGee* in 1984 unpersuasive. (*People* v. *Superior Court (Marks)* (1991) 1 Cal.4th 56, 65-66 [2 Cal.Rptr.2d 389, 820 P.2d 613] [An opinion is not authority for a proposition not therein considered.].) ■ The general rule is that the Legislature, in deleting a provision, intended a substantial change in the law. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 467 [194 Cal.Rptr. 390, 668 P.2d 697]; *Palos Verdes Faculty*

*Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) ■ "[A] more specific principle is directly applicable when, as here, the Legislature undertakes to amend a statute which has been the subject of judicial construction. In such a case it is presumed that the Legislature was fully cognizant of such construction, and when substantial changes are made in the statutory language it is usually inferred that the lawmakers intended to alter the law in those particulars affected by such changes." (*Ibid.*) ■ Here, the Legislature deleted the former reference to sections 12250 and 12850 and replaced it with a reference to new section 10980. (Stats. 1984, ch. 1448, § 6, p. 5078.) Since the former sections were the source of the judicial conclusion that there was a prior demand requirement, their deletion indicates a legislative intent to completely eliminate the prior demand requirement.

Second, the Legislature had acted, after *McGee*, to limit the prior demand requirement to only two categories of cases. Since, as discussed above, section 10980 was intended to reach a broader range of welfare fraud than former section 11483, a conclusion that the prior demand requirement was still in effect would substantially broaden the requirement by applying it to all categories of welfare fraud. There is no indication of a legislative intent to broaden the prior demand requirement in this manner.

Third, the deletion of the statutory reference to former sections 12250 and 12850 removes any current statutory underpinning to the argument that the statute requires a prior demand for restitution.

Finally, we note that our Supreme Court recently considered restitution for welfare fraud in *People* v. *Crow* (1993) 6 Cal.4th 952 [26 Cal.Rptr.2d 1, 864 P.2d 80]. Defendant in that case was convicted of aiding and abetting welfare fraud under section 10980. He argued that the trial court, having denied probation, could not order him to make restitution to the defrauded government agency. Our Supreme Court pointed out that the Constitution had been amended by initiative in 1982 to establish "the right of every crime victim to obtain restitution from the perpetrator of the crime for losses suffered." (6 Cal.4th at p. 956, citing Cal. Const., art. I, § 28, subd. (b).) The court held that the implementing statute was former Government Code section 13967, subdivision (c) (now Pen. Code, § 1202.4, subd. (f) et seq.). The court found that the Legislature intended the term "victim," as used in that section, to include defrauded government agencies. Accordingly, restitution was properly sought under that section. Neither former Government Code section 13967, nor current Penal Code section 1202.4 contains a requirement for a prior demand before criminal proceedings are instituted. Instead, both the old and the new sections specifically provide that restitution must be ordered after any criminal conviction. Enforcement of a prior

demand requirement would thus tend to vitiate the court's duty to order restitution after conviction.

## CONCLUSION

In *People* v. *McGee, supra,* 19 Cal.3d 948, our Supreme Court decided that the reference in section 11483 to former sections 12250 and 12850 created a requirement for a demand for restitution prior to commencement of criminal proceedings. Subsequent legislation limited this requirement to two categories of cases.

The 1984 amendments to section 11483 deleted the reference to former sections 12250 and 12850 and replaced it with a reference to section 10980. Section 10980 does not contain a prior demand requirement.

We hold that this change evidenced a legislative intent to delete the prior demand requirement. Since there is no such requirement in the present text of section 11483, we find that the older cases have been superseded by this statutory change. The trial court therefore erred in enforcing the prior demand requirement stated in *People* v. *McGee, supra,* 19 Cal.3d 948, and *People* v. *Jordan, supra,* 86 Cal.App.3d 529.[6]

## DISPOSITION

The judgment is reversed.

McKinster, J., and McDaniel, J.,* concurred.

---

[6]Respondent advances an equal protection argument based on the claim that all other similarly situated welfare fraud defendants have received a restitution demand claim prior to commencement of criminal proceedings, while she did not. We find no merit to this contention, as we have found that, since the 1984 amendments to section 11483, the law did not require a restitution demand prior to commencement of criminal proceedings.

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.