[No. E002050. Fourth Dist., Div. Two. July 9, 1986.]

GLORIA J. MADRID, Plaintiff and Appellant, v.
LINDA McMAHON, as Director, etc., Defendant and Respondent.

## COUNSEL

M. Joy Young and Ralph G. Hagemann for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Charlton G. Holland, Assistant Attorney General, and Anne S. Pressman, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**RICKLES, Acting P. J.**—Plaintiff Gloria J. Madrid has appealed from a judgment denying her petition for writ of mandate (Code Civ. Proc., § 1094.5). She sought the writ to obtain review and reversal of a decision by the Director of the Department of Social Services (DSS) that she is not entitled to an administrative fair hearing to determine whether she has fraudulently obtained overpayments from San Bernardino County under the program for aid to families with dependent children (AFDC). The director's reason for so deciding was that the welfare agency in San Bernardino County had not terminated plaintiff's AFDC benefits or demanded the return of overpayments and therefore there was no *agency action* subject to challenge in a fair hearing. In denying the petition for writ of mandate, the trial court agreed with this reasoning. Plaintiff has argued, both in the court below and on appeal, that a determination by a county welfare agency that an overpayment has occurred and its referral of the matter to the district attorney for prosecution constitute agency actions subject to challenge by a demand for a fair hearing.

### FACTS

Plaintiff established her residence in San Bernardino County and began receiving AFDC benefits there in December 1982. Her AFDC records were transferred from Riverside County, where she had previously resided.

The welfare agency in San Bernardino County received an anonymous tip which sparked an investigation leading eventually to the discovery that plaintiff had for some years been receiving AFDC benefits from Los Angeles County under the name Joy Lieberman.

When confronted with this information, in December 1983, plaintiff admitted she had received benefits from Los Angeles County while she was residing in and receiving benefits from Riverside and San Bernardino Counties. The checks from Los Angeles County had been mailed each month to an address in Pomona; plaintiff went there each month to meet the mailman and collect the check.

These admissions were made to Harry Bachelor, a fraud investigator for the welfare agency in San Bernardino County. An investigator for the corresponding agency in Riverside County was present at the interview.

Riverside County sent plaintiff a series of notices demanding repayment for overpayments of AFDC benefits for the period of September 1979 through November 1982, in the total amount of $15,967, because of unreported AFDC benefits from Los Angeles County. Plaintiff requested a fair hearing and it was held in April 1984. At the hearing evidence was received showing that plaintiff had received AFDC benefits from Los Angeles County under the name Joy Lieberman while also receiving AFDC benefits from Riverside County under the name Gloria Madrid. It was undisputed that plaintiff actually resided in Riverside County during this time and that plaintiff had not reported any of the Los Angeles payments to the welfare agency in Riverside County.

The hearing officer concluded that plaintiff had received overpayments from Los Angeles County but that the payments from Riverside County were not overpayments because plaintiff was residing in Riverside County and otherwise eligible for the benefits. The hearing officer directed Riverside County to rescind its notices of overpayment and to forward the information it had collected to Los Angeles County. The hearing officer's decision was adopted by the director of DSS on August 3, 1984.

Meanwhile, no notices of overpayment had been sent by the welfare agency in San Bernardino County. Instead, the matter had simply been referred to the district attorney. A complaint charging welfare fraud had been filed but the criminal proceedings had been held in abeyance.

After the termination of the administrative proceeding from Riverside County, plaintiff requested a fair hearing to determine whether there had been any overpayments from San Bernardino County. Plaintiff believed she

was entitled to a favorable determination on this issue which she could use, by the doctrine of collateral estoppel, to obtain dismissal of the criminal charges pending in San Bernardino County. (See *People* v. *Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321].)

A hearing was held on this request on October 15, 1984. The hearing officer dismissed plaintiff's claim, concluding there was no jurisdiction for the state hearing procedure because the welfare agency in San Bernardino County had not taken any action with respect to any overpayment. This decision was adopted by the director of DSS on February 1, 1985.

Plaintiff commenced the instant proceeding for writ of mandate on February 22, 1985. While this proceeding was pending, a preliminary hearing was held on the criminal complaint against plaintiff in San Bernardino County and she was held to answer. Shortly thereafter a hearing was held on the instant petition for writ of mandate and it was denied. Judgment was entered accordingly, from which this appeal has been taken.

In her appellate brief, plaintiff states that she has now been convicted of welfare fraud in Los Angeles County while the criminal proceedings in San Bernardino County remain pending.

### DISCUSSION

An AFDC recipient's right to a fair hearing is defined by section 10950 of the Welfare and Institutions Code: "If any applicant for or recipient of public social services is dissatisfied with any action of the county department relating to his application for or receipt of public social services, if his application is not acted upon with reasonable promptness, or if any person who desires to apply for public social services is refused the opportunity to submit a signed application therefor, and is dissatisfied with such refusal, he shall, in person or through an authorized representative, without the necessity of filing a claim with the board of supervisors, upon filing a request with the State Department of Social Services or the State Department of Health Services, whichever department administers the public social service, be accorded an opportunity for a fair hearing. . . ."

According to plaintiff, the actions of the county welfare agency subject to review by fair hearing include: (1) computation of overpayment; (2) referral of the case to the special investigative unit (SIU), an internal fraud investigation department; (3) investigation by the SIU; (4) referral of the case by the SIU to the district attorney; and (5) the filing of criminal charges. The issues to be determined in an administrative fair hearing, according to

plaintiff, are: (1) the amount of any overpayment, and (2) whether an overpayment occurred in San Bernardino County.

The term "action" in section 10950 must be given a commonsense construction in keeping with the legislative scheme of which it is a part. (*People v. Ruster* (1976) 16 Cal.3d 690, 696 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].) ██ The Legislature could not have intended that every event occurring during the processing of an application and the delivery of benefits—no matter how trivial or inconsequential—could be the subject of a demand for an administrative fair hearing.

This conclusion is supported by *County of Santa Clara* v. *Support, Inc.* (1979) 89 Cal.App.3d 687 [152 Cal.Rptr. 754], in which it was held (at p. 704) that "merely providing an accounting of actual welfare expenditures to the district attorney cannot reasonably be said to be an 'action of the county welfare department relating to his application for or receipt of aid,' which establishes a right to the fair hearing described in section 10950."

██ Litigation of trivial or purely hypothetical issues, or those which are not yet ripe for adjudication, is disfavored. (See *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 170-174 [188 Cal.Rptr. 104, 655 P.2d 306]; *Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 119-120 [145 Cal.Rptr. 674, 577 P.2d 1014]; *Shoemaker* v. *Goldman* (1934) 2 Cal.App.2d 229, 231 [37 P.2d 724].) Thus the test of whether an agency action is subject to challenge in a fair hearing is whether it has a significant effect on the claimant's application for or receipt of the aid or other service provided by the county agency.

Here plaintiff presented evidence, in the form of a preliminary hearing transcript, showing a determination by the county agency of an overpayment of AFDC benefits to plaintiff in the amount of $6,475 in AFDC benefits and $2,050 in food stamps benefits. It is not entirely clear, however, that the agency has determined whether the overpayment originated from San Bernardino County or Los Angeles County or both. Assuming the agency has made a determination of overpayment from San Bernardino County, plaintiff has still failed to show that the determination was final rather than interim or tentative. The failure of the county agency to demand return of overpayment strongly suggests it has *not* made a final determination of overpayment from San Bernardino County.

██ The referral of the plaintiff's case to the SIU, the investigation by the SIU, and the subsequent referral by the SIU to the district attorney are all internal actions having no immediate or direct impact on plaintiff's

application for or receipt of benefits. Consequently they are not actions which may be challenged by fair hearing.

Plaintiff has obviously been immediately and directly affected by the filing of criminal charges against her. Plaintiff has freely conceded that the filing of charges prompted her demand for a fair hearing and that the purpose of the demand is to obtain a favorable administrative ruling which can be used to halt the criminal prosecution. ▮ Thus the basic issue presented on this appeal is whether the administrative fair hearing process can be employed for the sole purpose of affecting collateral criminal proceedings.

Arguing that this is a proper use of the fair hearing procedure, plaintiff quotes certain language from the opinion of our Supreme Court in *People v. Sims, supra,* 32 Cal.3d 468, which held that the state may be barred by collateral estoppel from prosecuting a person for welfare fraud when he or she has been exonerated of that charge in an administrative fair hearing. Of relevance to the issues here, the court stated: "As this court recognized in *McGee* [*People v. McGee* (1977) 19 Cal.3d 948 [140 Cal.Rptr. 657, 568 P.2d 382]], the Legislature has apparently determined that since public assistance provides recipients with only the most minimal standard of living, recipients suspected of fraudulently obtaining benefits are entitled to some protection from criminal prosecution. (*People v. McGee, supra,* 19 Cal.3d at pp. 963-965.) ▮ Accordingly, the unique statutory scheme set up by the Legislature establishes a policy in favor of resolving AFDC fraud cases outside the criminal justice system. (*Ibid.*) The state must seek restitution by request or civil action before initiating criminal proceedings in cases involving certain categories of AFDC fraud. (§ 11483.) When a request for restitution results in a fair hearing determination by the DSS that no fraud has been committed, that decision should collaterally estop a criminal prosecution for the same charge. To hold otherwise, this court would have to ignore the safeguards afforded welfare recipients by the Legislature." (*People v. Sims, supra,* 32 Cal.3d at p. 489.)

Plaintiff cites a portion of this passage for the proposition that all AFDC fraud cases should first be litigated in administrative proceedings, but this is a misreading of *Sims.* As *Sims* recognized, the Legislature has required an attempt to obtain restitution as a prerequisite to bringing criminal charges only in "cases involving *certain categories* of AFDC fraud." (Italics added.) Indeed, after the decision in *McGee,* the Legislature amended section 11483 of the Welfare and Institutions Code to further limit the kinds of cases in which an attempt to obtain restitution would be required: "Section 11483 was amended in 1979 so that now an attempt to secure restitution prior to

bringing a criminal action is only required where a person is charged with failing to report not more than $2,000 of income or resources or failing to report the presence of one additional person or persons in the household." (*People* v. *Sims, supra,* 32 Cal.3d 468, 475, fn. 4.)

██  The present case is apparently not subject to the restitution attempt requirement.[1] If it were, plaintiff could invoke section 11483 to obtain a stay or dismissal of the criminal charges. (See *People* v. *Durrett* (1985) 164 Cal.App.3d 947, 952-953 [210 Cal.Rptr. 874].) The case not being subject to the restitution attempt requirement, there is no legislative policy favoring an administrative determination of the fraud issue before commencing criminal proceedings. On the contrary, the 1979 amendment of section 11483 can only be interpreted as a determination that criminal and administrative proceedings should be allowed to proceed separately and independently, although still subject to the rules of collateral estoppel, in cases not subject to the restitution attempt requirement. In the present case, this policy is implemented by holding that plaintiff has no right to an administrative fair hearing.

The judgment is affirmed.

Kaufman, J., and Dorr, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied September 25, 1986. Bird, C. J., Broussard, J., and Reynoso, J., were of the opinion that the petition should be granted.

---

[1] The qualifier "apparently" is used here because the appellate record does not disclose the exact charges brought against plaintiff in the San Bernardino criminal proceedings.

*Assigned by the Chairperson of the Judicial Council.