[No. D004082. Fourth Dist., Div. One. July 31, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DARLENE KEEHLEY, Defendant and Appellant.

1382

## COUNSEL

Estelle A. Schleicher, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, William M. Wood and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

WIENER, J.—Defendant Darlene Keehley appeals after a jury convicted her of one count of welfare fraud (former Welf. & Inst. Code, § 11483, subd. (2)), two counts of perjury (Pen. Code, § 118) and one count of unauthorized possession of food stamps (former Pen. Code, § 396). The perjury counts were alleged to have occurred on the specific dates of December 22, 1982, and January 1, 1983. Keehley's principal contentions involve her asserted statute of limitations defense. As to the welfare fraud and food stamp counts, we conclude that they are continuing offenses such that the statute of limitations does not begin to run until the offense is completed. Here, the undisputed facts show that these two offenses were not completed until at least June 1983. Thus, the prosecution, which was filed on April 3, 1985, was well within the three-year statute of limitations. (See former Pen. Code, § 800.) As to the perjury counts, a similar rationale cannot apply because perjury is not a continuing crime. The instances of perjury charged by the prosecutor, however, also fall well within the limitations period. Accordingly, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 8, 1979, Keehley submitted an application for welfare assistance to the San Diego County Department of Social Services (DSS). She requested aid to families with dependent children (AFDC), Medi-Cal benefits and food stamps on behalf of her two dependent children, Charlene and Doreen. As part of the application process, Keehley falsely indicated

that she was not receiving Social Security benefits. She then signed the application under penalty of perjury.

DSS determined Keehley was eligible for the requested benefits, which she began receiving shortly thereafter. She received AFDC cash payments and food stamps from January 1979 through June 1983. During this period, she filed monthly income report forms with the DSS in which under penalty of perjury she failed to state she was receiving Social Security benefits. Each December she was required to complete AFDC renewal forms, also under penalty of perjury. In these forms Keehley stated she was not receiving Social Security benefits. The two perjury counts were based on an AFDC renewal form filed December 22, 1982, and a monthly income report form filed January 1, 1983.

Keehley's roommate[1] testified he accompanied her to the DSS offices on one occasion in early 1980 or 1981 and informed personnel there that she was receiving Social Security benefits. According to the DSS, the first time county officials were aware of the unreported Social Security income was in June 1983.

DISCUSSION

I

■■ ■■ The principal issue in this case is how the statute of limitations is to be applied to the crimes of welfare fraud, unauthorized possession of food stamps and perjury. If the limitations period began to run on any of the charged crimes more than three years prior to the filing of the complaint in April 1985, the prosecution may be barred.[2]

■■ With respect to perjury, the offense is the false swearing; each successive false swearing constitutes a separate and distinct offense. (See *People* v. *Viniegra* (1982) 130 Cal.App.3d 577, 583 [181 Cal.Rptr. 848]; see also *Trigg* v. *Superior Court* (1975) 49 Cal.App.3d 685 [122 Cal.Rptr. 634].) Although the district attorney may have been barred from charging perjuries which occurred before April 1982, there is nothing impermissible about charging the two offenses specified in this complaint, which allegedly were committed in December 1982 and January 1983.

---

[1] Keehley's roommate, Louis Atiles, was married to Keehley in a ceremony in Mexico in 1976. The marriage was not recognized as valid in the United States.

[2] We say *"may* be" because the People contend—and the trial court agreed—that a 1981 amendment to former Penal Code section 800 applies such that the three-year limitations period did not begin to run until county officials reasonably discovered Keehley's alleged crimes. In view of our conclusion, we need not address the applicability of the amended "discovery" provision of section 800.

■ The welfare fraud and food stamp charges, however, are of a different nature. The People contend that Welfare and Institutions Code section 11483 and former Penal Code section 396 define "continuing offenses," contemplating as the actionable crime what may be a continuing course of conduct. ■ In the case of continuing offenses, only one violation occurs even though the proscribed conduct may extend over a indefinite period. (See *People* v. *Zamora* (1976) 18 Cal.3d 538, 560, fn. 21 [134 Cal.Rptr. 784, 557 P.2d 75]; *Braverman* v. *United States* (1942) 317 U.S. 49 [87 L.Ed. 23, 63 S.Ct. 99].) On the other hand, the limitations period does not commence as to continuing offenses until the entire course of conduct is complete. (*Zamora, supra;* 1 Wharton, Criminal Law (Torcia ed. 1978) § 90, p. 416; 2 LaFave & Israel, Criminal Procedure (1984) § 18.5, p. 425.)

Former Penal Code section 396[3] clearly contemplates that a course of conduct may satisfy the statute's prohibition. In defining the difference between a misdemeanor and felony violation, the statute allowed "the cumulative face value of the food stamps used . . . over any period no longer than two years . . ." to be considered. In this context, food stamps acquired at different times but pursuant to a common plan or scheme constitute a single violation.

■ While its language is not as clear, we reach a similar conclusion with respect to Welfare and Institutions Code section 11483.[4] The focus of the statute is on the "fraudulent device" utilized by the recipient to obtain the aid and not on the number of times the same "device" is used to garner benefit checks as part of an overall plan or scheme. As the court explained in *Bramblett* v. *United States* (D.C. Cir. 1956) 231 F.2d 489, 491, confronted with a similar issue involving the interpretation of a federal statute, "[D]oubts should be resolved in favor of a construction that avoids subjecting an offender to multiple convictions by reason of a single unified pattern of behavior even though the behavior continues over a period of time."

---

[3] Between 1980 and 1985, Penal Code section 396 provided in relevant part as follows: "Whoever knowingly uses, transfers, acquires, or possesses food stamps . . . in any [unauthorized] manner . . . is guilty of a misdemeanor if the face value of the food stamps . . . is two hundred dollars ($200) or less; or is guilty of a felony if the face value of the food stamps . . . exceeds two hundred dollars ($200), or if the cumulative face value of the food stamps used, transferred, acquired, or possessed in such manner over any period no longer than two years exceeds two hundred dollars ($200)."

[4] During the relevant period, section 11483 provided in part: "Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall be punished as follows: [¶] . . . (2) If the amount obtained or retained is more than two hundred dollars ($200), by imprisonment in the state prison, or by imprisonment in the county jail for not more than one year."

This conclusion is supported by language in *People* v. *Woods* (1986) 177 Cal.App.3d. 327 [222 Cal.Rptr. 868]. *Woods* involved a defendant who participated in a scheme in which a codefendant used 12 fictitious identities to perpetrate a welfare fraud. In affirming defendant's conviction on 12 counts of violating section 11483, the court emphasized that "the prosecution did not charge a separate count for each and every welfare check which was cashed."[5] (*Id.* at p. 331; cf. *People* v. *Richardson* (1978) 83 Cal.App.3d 853, 866 [148 Cal.Rptr. 120].)

We recognize that this language in *Woods* can only accurately be characterized as a suggestion in dicta that a separate count of welfare fraud cannot be charged for each check cashed. Nonetheless, this suggestion comports not only with our commonsense view of the purpose of the statute but also with the apparent positions of two district attorney's offices as reflected by their filing practices in this case and *Woods*.

Our conclusion that welfare fraud as practiced in this case is a continuing offense is a two-edged sword. Although it precludes the prosecutor from charging multiple counts where the defendant has pursued a single course of conduct, it also prevents the defendant from invoking the bar of the statute of limitations as long as the *completion* of the course of conduct lies within the statutory period. (See *ante,* p. 1385.) Here, because it is undisputed Keehley's course of fraudulent conduct was not completed before June 1983, the information filed in April 1985 was timely.

## II

■ In order to support her contention that she lacked the requisite mental state to sustain a conviction, Keehley attempted to introduce evidence indicating she suffered from a serious mental illness between 1979 and 1983. Although the trial court allowed most of Keehley's evidence to be admitted, it excluded any evidence which related solely to her condition after January 1, 1982, on the theory that Proposition 8's abolition of the "diminished capacity" defense eliminated the relevance of such evidence. Keehley contends, and the People concede, that such exclusion was error because relevant evidence is always admissible to show that the defendant did not in fact entertain the specific intent which is a necessary element of

---

[5] There is no statement of facts from which one can attempt to discern whether *Gasaway* v. *Superior Court* (1977) 70 Cal.App.3d 545 [139 Cal.Rptr. 27] stands for a contrary proposition. There, the court ordered three counts of welfare fraud dismissed on statute of limitations grounds and allowed the prosecution to replead a fourth count in an attempt to avoid the limitations bar, but it is impossible to tell whether the four counts were part of a single course of conduct.

the charged crime. (See, e.g., *People* v. *Jackson* (1984) 152 Cal.App.3d 961, 968 [199 Cal.Rptr. 848].)

We nonetheless cannot conclude that the error was prejudicial. The 1982 demarcation was not highlighted for the jury; there was nothing in the evidence to suggest that Keehley's condition changed then or at any other time during the course of conduct. In that sense, the excluded evidence was merely cumulative of the evidence which was admitted. There is no reasonable probability that the result would have been different in the absence of the error. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## DISPOSITION

Judgment affirmed.

Kremer, P. J., and Butler, J., concurred.

A petition for a rehearing was denied August 18, 1987, and appellant's petition for review by the Supreme Court was denied November 10, 1987.