Filed 7/25/13  P. v. White CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B243562 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA090939) |
| v. | |
| QUINTEN WHITE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mark C. Kim, Judge.  Reversed in part and affirmed in part.

David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Seth P. McCutcheon, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Quinten White appeals from the judgment entered following a jury trial in which he was convicted of two counts of possession of a firearm by a felon. Defendant contends he was improperly convicted of two counts based upon continuous possession of a single gun, the trial court committed evidentiary error, and territorial jurisdiction was not established for one of the offenses. The Attorney General concedes that the evidence established only a single continuing possession of a single gun, and thus permitted only one conviction. We reverse defendant's conviction as to one of the two counts, but otherwise affirm.

## BACKGROUND

Just after midnight on December 24, 2011, a citizen flagged down Long Beach Police Officer Kalid Abuhadwan outside the Rhythm Lounge in Long Beach and said there was a person with a handgun inside the lounge. (Date references pertain to 2011.) Abuhadwan broadcast the information over his radio and went inside the lounge to investigate. Someone told him there had been a fight and "everybody left."

Long Beach Police Officer Robert Trout was driving his police patrol car on Pacific, near Fourth Street, en route to assist other officers with a traffic stop. Trout was following behind another police car when defendant suddenly ran across the street right in front of them, against traffic. The driver of the police car ahead of Trout slammed on the brakes and swerved to avoid hitting defendant. Trout stopped his car and directed defendant to approach. Defendant looked at Trout, then ran west on Fourth Street. Trout drove south and through a parking lot to attempt to head off defendant. A doughnut shop near the corner of Fourth and Pacific blocked Trout's observation of defendant for about 10 seconds. Trout did not see defendant throw anything. Trout stopped defendant and searched him. Defendant had no weapons, but he had a bleeding laceration on his right "pinky" finger and wet blood on both of his palms. Defendant told Trout he had been involved in an altercation and wanted to go home. Trout talked to Abuhadwan by radio and learned of the report of a person with a gun. Trout told defendant he was free to go.

2

Defendant walked back toward a chain-link fence around a storage area behind the doughnut shop and paced in a five- to ten-foot area. Trout thought this was odd, and after about 15 seconds, he asked defendant what he was doing. Defendant walked away from the area.

After defendant left, a man approached Trout and they had a conversation. The man pointed toward the chain-link fence by the doughnut shop. Trout walked over to the fence and saw a handgun lying on the asphalt inside the fence. He broadcast a request for other officers to stop defendant, then climbed the fence and recovered the gun, which was a loaded .40-caliber Smith and Wesson semiautomatic. A wet, red substance that appeared to be blood coated the grip and trigger of the gun. The gun was otherwise dry and the asphalt where it had lain was also dry. In Trout's experience, objects left outside overnight that close to the ocean tend to become moist. Close examination revealed shiny scratches in the metal of the gun. Officer John Garry opined the scratches looked new. Several photographs of the gun were introduced in evidence.

Trout testified that, apart from defendant and the man with whom Trout conversed, no one else was around the area where Trout found the gun and the nearby businesses were closed. The site where Trout found the gun was about one and one-half blocks from the Rhythm Lounge.

Defendant was arrested and taken to the police station. Photographs of defendant's hands and laceration were introduced in evidence. A Juno "smart phone" found in defendant's pocket contained photographs of him and two photographs of a portion of the torso of someone with a handgun tucked into the waistband of blue jeans. No face was shown in the two torso photographs and Trout could not determine whether the person depicted was a man or woman. These photographs were introduced into evidence. Trout testified that the grip of the gun depicted in the phone photograph appeared to match the grip of the gun he recovered. Officer Sean Magee extracted the data and images from the phone. The file information for the photos of the torso with a

3

gun in the waistband indicated they were taken by a Juno phone on December 22 at 4:37 p.m.

For the purpose of the gun possession charge, the parties stipulated that defendant had a prior felony conviction.

The jury convicted defendant of two counts of possession of a firearm by a convicted felon, one committed on December 22 and one committed on December 24. Defendant admitted allegations he had suffered a prior serious or violent felony conviction within the scope of the "Three Strikes" law and had served a prior prison term within the scope of Penal Code section 667.5, subdivision (b). The court sentenced defendant to prison for six years four months, consisting of a four-year second-strike term for the December 24 offense, plus one year for the prior prison term enhancement, plus a subordinate term of 16 months for the December 22 offense.

## DISCUSSION

### 1.       Counts 1 and 2:  single continuing offense

Defendant contends, and the Attorney General aptly concedes, that possession of a firearm by a felon is a continuing offense, the prosecution failed to introduce any evidence that defendant either possessed different guns on December 22 and December 24 or that there was an interruption in his possession of the same gun, and that one of the two convictions must be reversed for this reason. We agree. (*People v. Keehley* (1987) 193 Cal.App.3d 1381, 1385; *People v. Gregori* (1983) 144 Cal.App.3d 353, 357.) We choose to reverse count 2, which was based upon the December 22 photographs of a gun in a waistband, because the evidence pertaining to that count was extremely weak, at best. The photographs did not show a face, and the record does not indicate that they depicted any other attributes that would serve to identify defendant as the person in the photograph. Indeed, Trout testified he could not even determine whether the person whose torso was depicted was a man or a woman. In addition, as defendant argues on appeal, the prosecution failed to establish territorial jurisdiction with respect to the count

4

because nothing indicated that the person photographed was in California at the time the photograph was taken. Accordingly, we reverse count 2.

**2.      Count 1:  erroneous admission of evidence**

**a.      Informant's conversation with Trout and gesture**

Before trial, defendant sought to exclude the statement by the anonymous person who told Trout that defendant had thrown an object over the chain-link fence while running on Fourth Street. Defendant argued that its admission would violate his constitutional confrontation rights. The court agreed and excluded the statement. The prosecutor asked if Trout would be allowed to testify that he had a conversation with the anonymous person. The court replied that Trout could so testify because that would not be hearsay or implicate defendant's confrontation rights.

When Trout testified, the prosecutor asked him, with respect to the person who approached him, "And when he came to you, what happened?" Trout replied, "We had a conversation and he pointed over towards the chain-link fence area that connects to 355 Pacific." Defendant did not object.

Defendant contends that the trial court erred by admitting Trout's testimony that he had a conversation with the informant and the informant pointed toward the fence. Defendant argues this testimony was hearsay and had no nonhearsay relevance.

The trial court granted defendant's request to exclude evidence of what the anonymous informant told Trout. Trout was apparently expected to testify that he had a conversation with the man, then went to the fence and saw a gun, without reference to the informant pointing toward the fence. Trout's testimony that he had a conversation with a man was not hearsay because it did not relate the content of an out-of-court statement, but merely what Trout and the man did. Trout's apparently unexpected testimony regarding the informant pointing toward the chain-link fence may have been hearsay in that it related the informant's nonverbal expressive conduct, possibly to establish the truth of the implicit statement that something was near the fence or some event happened near or in the direction of the fence. But defendant did not object to this testimony, and

5

thereby forfeited his appellate claims regarding it. (*People v. Partida* (2005) 37 Cal.4th 428, 434.) Had he asserted a timely hearsay objection, the court could have stricken the testimony and told the jury to disregard it or, if the prosecutor had asserted a nonhearsay purpose for introducing the evidence, the court could have evaluated the asserted relevance and given a limiting instruction if the court admitted the evidence. Defendant's failure to object deprived the court and the prosecutor of an opportunity to address and correct the purported error. Accordingly, we do not address defendant's appellate contention.

**b.      Statements to Abuhadwan**

The prosecutor informed the court before trial that Abuhadwan would testify that a person flagged him down to report that someone had a gun. Defendant argued this testimony should be excluded both as a violation of his confrontation rights and under Evidence Code section 352. (Undesignated statutory references are to the Evidence Code.) The trial court did not address the latter ground, but ruled that there was no confrontation violation because it was offered for a nonhearsay purpose. The court explained, "It is not offered to prove that somebody, in fact, did have a gun, because you indicated that nothing ultimately came of it, but it explains why the officer did what they [*sic*] did after they [*sic*] heard that statement."

Defendant contends that the trial court erred by admitting the statement to Abuhadwan over defendant's objection. He argues the nonhearsay purpose asserted by the court was irrelevant and the trial court erred by failing to weigh the probative value of the evidence against its potential for prejudice. Defendant does not argue on appeal that admission of this statement violated his confrontation rights.

We agree that the statement to Abudhadwan was irrelevant for its purported nonhearsay purpose. Neither Abudhadwan's conduct nor the motivation for his conduct had any tendency in reason to prove or disprove any fact of consequence in the action. The charges against defendant were not based on carrying or displaying a gun in the lounge and the legitimacy of the officers' actions was neither relevant nor in controversy.

6

Defendant came to officers' attention because he ran across the street against traffic directly in front of their police cars, then resumed running when Trout asked him to approach. Trout released defendant even though Trout knew about the report to Abuhadwan, and Trout discovered the gun as a result of the man who approached him, not the earlier report to Abuhadwan. Accordingly, the anonymous witness's report to Abuhadwan was irrelevant for the nonhearsay purpose cited by the trial court and for any other nonhearsay purpose.

The only possible relevance of the statement to Abuhadwan was the truth of the matter asserted therein: someone had a gun in the bar. Since defendant was seen running in the vicinity of the bar and could be connected to the recovered gun, the report supported an inference that defendant was the person with the gun in the bar and discarded the gun after encountering the police because he knew that people in the bar had seen the gun and thought that the police were looking for him for that reason. But the statement to Abuhadwan was hearsay; no hearsay exception has been suggested by the Attorney General, and no exception appears to be applicable.

In addition, the trial court erred by failing to consider defendant's section 352 objection. Section 352 provides that the court may, in its discretion, exclude relevant evidence if its probative value is substantially outweighed by the probability that its admission will be either unduly time consuming or create a substantial danger of undue prejudice, confusing the issues, or misleading the jury. Given the absence of any probative value when considered for its nonhearsay purpose, the trial court should have excluded the statement to Abuhadwan under section 352.

The court's erroneous admission of the evidence requires reversal only if it is reasonably probable defendant would have obtained a more favorable outcome had the evidence been excluded. (§ 353, subd. (b); *People v. Earp* (1999) 20 Cal.4th 826, 878; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Under the circumstances, we conclude that it is not reasonably probable defendant would have obtained a more favorable outcome had the trial court excluded the statement to Abuhadwan. Strong circumstantial

evidence connected Trout to the recovered gun. According to Trout, no one else was in the area where Trout recovered the gun except defendant and the person with whom Trout conversed. The businesses were closed. The gun and the asphalt where it lay were dry, indicating that the gun had not been there for very long. The gun was coated with a wet red substance that appeared to be blood, and defendant had a bleeding wound on his hand and blood on his palms when stopped by Trout. Most incriminating was defendant's suspicious conduct after Trout told him he was free to go. Defendant paced next to the fence at the location where Trout subsequently recovered the gun. The jury could reasonably infer defendant knew the gun was there because he had thrown it there, and he was remaining in the vicinity because he wanted to retrieve it. In contrast with this strong evidence, hearing that someone had a gun in a nearby bar was relatively trivial. We cannot conclude that it is reasonably probable that the jury would have acquitted defendant or been unable to reach a verdict had the trial court excluded the statement to Abuhadwan.

It is unclear whether defendant asserts on appeal that the trial court also erred by permitting Abuhadwan to testify that when he went into the bar someone told him there had been a fight and "everybody left." Defendant forfeited any such claim by failing to object to this statement at trial. It was not addressed during the pretrial discussion of Abduhadwan's testimony, and defendant did not object when Abuhadwan so testified.

## DISPOSITION

Count 2 is reversed and the sentence for count 2 is stricken. The judgment is otherwise affirmed and the cause remanded. The trial court is directed to issue an amended abstract of judgment.

NOT TO BE PUBLISHED.


MALLANO, P. J.

We concur:


ROTHSCHILD, J.


CHANEY, J.