Filed 1/8/16  P. v. Castro CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>WILLIAM MARTIN CASTRO,<br><br>    Defendant and Appellant. | C072886<br><br>(Super. Ct. No. 11F03112) |

A jury found defendant William Martin Castro guilty of the second degree robbery of Santiago Ramirez (Pen. Code,[1] § 211; count 2), two counts of being a felon in possession of a firearm (former § 12021, subd. (a)(1); counts 3 & 4), possession of a loaded firearm capable of being concealed (former § 12025, subd. (b)(6); count 5), and possession of a loaded firearm (former § 12031, subd. (a)(2)(F); count 6).  The jury also

---

[1]   Further undesignated statutory references are to the Penal Code.

1

found true allegations defendant personally used a firearm during the commission of count 2 (§ 12022.53, subd. (b)) and was not the registered owner of the firearm he was found guilty of possessing in counts 5 and 6. The jury was unable to reach a verdict on count 1 (second degree robbery of Victor Arce-Rios), and a mistrial was declared as to that count. Thereafter, the jury determined that defendant was sane when he committed counts 3 through 6 but deadlocked on defendant's sanity as to count 2, and a mistrial was declared as to count 2. In a bifurcated proceeding, defendant admitted two prior prison term allegations. (§ 667.5, subd. (b).) Following a retrial on defendant's guilt as to count 1 and his sanity as to counts 1 and 2, the jury found defendant guilty on count 1 and determined he was sane when he committed counts 1 and 2.

Defendant was sentenced to an aggregate term of 18 years 8 months in state prison as follows: the upper term of five years on count 2, plus 10 years on the firearm enhancement pursuant to section 12022.53, subdivision (b); a consecutive one year on count 1; a consecutive eight months on count 3; a concurrent three years on count 4; and an additional one year for each of the two prior prison term enhancements. The trial court stayed defendant's sentences on counts 5 and 6 pursuant to section 654.

Defendant appeals, contending (1) there is insufficient evidence to support his conviction on count 1; (2) his statutory and constitutional rights were violated by the sanity jury's failure to make a finding on the section 12022.53 enhancement; (3) the trial court erred in failing to stay his sentence on count 3 pursuant to section 654; (4) his conviction on count 3 or 4 must be reversed because possession of a firearm is a continuing offense; (5) the trial court abused its discretion in failing to rule on his request to strike the prior prison term enhancements; and (6) he is entitled to two additional days of custody credit.[2]

---

[2]  Defendant also contends that the trial court erred in failing to stay his sentences on counts 5 and 6. As detailed above, the trial court did stay his sentences on those counts.

2

We shall reverse the judgment and remand the matter with directions to (1) vacate one of defendant's convictions for being a felon in possession of a firearm (counts 3 & 4), (2) resentence defendant on the remaining counts, and (3) award defendant two additional days of custody credit. We shall affirm the judgment in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND[3]

On April 21, 2011, at approximately 5:30 a.m., Victor Arce-Rios was outside his apartment smoking a cigarette and texting his girlfriend when defendant approached him and asked for a cigarette. When Arce-Rios responded that he did not have another cigarette, defendant asked if he could use Arce-Rios's cell phone. Arce-Rios handed defendant his phone, and defendant punched Arce-Rios in the face. Arce-Rios then asked for his phone back, and defendant told Arce-Rios that he was not getting it back. After determining that Arce-Rios had nothing else of value, defendant told him to leave, and Arce-Rios ran back to his apartment. Arce-Rios never got his phone back.

On April 22, 2011, at approximately 5:00 a.m., Santiago Ramirez was at Our Lady of Guadalupe Catholic Church for Good Friday prayers. As he exited the restroom, defendant pointed a gun at him, instructed him to hand over his cell phone, and then ordered him to get on the ground. Ramirez did as he was told. With his gun still trained on Ramirez, defendant asked Ramirez for his wallet. Ramirez gave defendant his wallet. He had $2,000 in his wallet because he planned to purchase a car for a friend after the prayer session.

On April 27, 2011, at approximately 1:35 a.m., Sacramento Police Officer Nvard Msryan responded to a "suspicious circumstances" call in Midtown Sacramento. She

---

[3] Our factual summary is limited to the facts relevant to the issues raised on appeal. The facts relevant to count 1 (second degree robbery of Arce-Rios) are taken from the transcript of the retrial, and the remaining facts are taken from the transcript of the original trial.

saw defendant walking down 28th Street, approached him, and asked him if he had any identification. He did not. When Msryan told defendant she was going to pat him down for weapons, he informed her that he had a loaded gun. Msryan instructed defendant not to move, defendant attempted to punch her in the face and then ran away. He later was found lying in some tall grass and was arrested. Defendant's jacket was found nearby and contained $557 in cash and a cell phone. He told officers he got rid of the gun and ran away because he did not want to go back to prison. He described the gun as a black, .380-caliber handgun with one bullet in the chamber and two in the magazine. Officers searched the area where defendant said he disposed of the gun and found a black Beretta .380-caliber handgun with one bullet in the chamber and two in the magazine. Defendant claimed he got the gun from a "street friend" named Gabby Wayne. The gun was not registered to defendant or Gabby Wayne.

On his way to jail, defendant told Msryan, "I robbed the Hispanic guy at the Roman church." He said that he took "[a] little less than $2,000," deposited $500 in his girlfriend's bank account, purchased cell phones for himself and his cousin, and ate at Lyon's, leaving him with $537.

Defendant testified in his own defense at both trials. Defendant thought Arce-Rios was part of a secret society and was following him. Defendant asked Arce-Rios for his phone because he believed it had something to do with the secret society. He planned to punch Arce-Rios "to make an example of somebody, so they'd stop" following him. After Arce-Rios handed defendant the phone, defendant pushed one or two numbers, then punched Arce-Rios in the face, and Arce-Rios ran away.

Defendant believed that the secret society originated from Our Lady of Guadalupe Church. When he saw Ramirez come around a corner at the church, he thought the secret society was preparing to attack him. He pointed his gun at Ramirez, told him to "[g]et the fuck on the ground," and demanded his cell phone and wallet. He believed that

4

Ramirez's wallet was evidence of the secret society and planned to give the money to the Federal Bureau of Investigation.

Defendant admitted that he was carrying a loaded gun on April 27, 2011, when confronted by Officer Msryan, and that he threw it over a fence.

DISCUSSION

I

There Is Ample Evidence to Support Defendant's Conviction
for the Robbery of Arce-Rios (Count 1)

Defendant first contends that his conviction on count 1 must be reversed because there is insufficient evidence he (1) used force or fear to take the cell phone from Arce-Rios or prevent Arce-Rios from resisting, or (2) intended to permanently deprive Arce-Rios of the phone when defendant used force or fear.  We disagree.

When considering a challenge to the sufficiency of the evidence supporting a conviction, we must " 'review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence -- i.e., evidence that is credible and of solid value -- from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.' " (*People v. Jennings* (1991) 53 Cal.3d 334, 364.)  Even where the evidence of guilt is primarily circumstantial, the standard of appellate review is the same.  (*People v. Holt* (1997) 15 Cal.4th 619, 668 [" ' " 'If the circumstances reasonably justify the [jury's] findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment' " ' "].)  To succeed under a substantial evidence review, the defendant must establish that no rational jury could have concluded as it did—it does not matter that "the evidence could reasonably be reconciled with a finding of innocence or a lesser degree of crime . . . ."  (*People v. Hill* (1998) 17 Cal.4th 800, 849; see *People v. Hovarter* (2008) 44 Cal.4th 983, 1015 [" ' "An appellate court must

accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded otherwise" ' "].)

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.)  "Robbery is larceny with the aggravating circumstances that 'the property is taken from the person or presence of another . . .' and 'is accomplished by the use of force or by putting the victim in fear of injury.'  [Citation.]  In California, '[t]he crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety.'  [Citation.]  It thus is robbery when the property was peacefully acquired, but force or fear was used to carry it away.  [Citation.]" (*People v. Anderson* (2011) 51 Cal.4th 989, 994 (*Anderson*).)  "The intent required for robbery has been described as the specific intent to deprive the victim of the property permanently.  [Citations.]  Thus, 'the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal . . . .'  [Citation.]" (*Ibid.*)

Defendant claims that his punch "was merely a gratuitous act of violence which was neither necessary to obtain the phone (because [he] already had it) nor needed in order to escape with the cell phone (because [Arce-Rios] asked for his cell phone back after the punch)."  While it is undisputed that Arce-Rios voluntarily handed his phone to defendant, there is ample evidence to support a finding that force was used to "carry it away." (*Anderson, supra,* 51 Cal.4th at p. 994.)  After obtaining possession of the phone, defendant punched Arce-Rios in the face, refused to return the phone, and told Arce-Rios to leave.  On this record, the jury reasonably could infer that defendant punched Arce-Rios in the face to dissuade Arce-Rios from attempting to regain possession of his phone. While Arce-Rios later asked for his phone back, he made no effort to regain possession once defendant refused to return it.  The jury reasonably could attribute Arce-Rios's acquiesce to defendant's punch and conclude that defendant's punch was intended to

6

achieve that result. That defendant told Arce-Rios to leave while defendant retained possession of Arce-Rios's phone is evidence defendant intended to permanently deprive Arce-Rios of the phone. Accordingly, there is ample evidence to support defendant's conviction on count 1.

## II
### The Sanity Jury Necessarily Determined That Defendant Was Sane When He Personally Used a Firearm in the Commission of Count 2

Defendant next contends that his constitutional and statutory rights were violated because the sanity jury did not make a finding on the 10-year section 12022.53, subdivision (b) enhancement appended to count 2. He is mistaken.

During the first trial, the jury found defendant guilty on count 2 (robbery of Ramirez) and found true an allegation defendant personally used a firearm in the commission of that offense under section 12022.53, subdivision (b). Thereafter, the jury was unable to reach a verdict on defendant's sanity as to that count. On retrial, the jury determined that defendant was sane "at the time of the commission of the offense of second degree robbery of Santiago Ramirez." The jury was not asked to make a determination as to defendant's sanity specific to the firearm enhancement. Defendant claims that the jury's failure to make such a finding violated his constitutional and statutory rights.

As previously discussed, the jury determined that defendant was sane "at the time of the commission of the offense of second degree robbery of Santiago Ramirez." In so finding, the jury necessarily concluded that defendant was sane when he personally used a firearm in the commission of that offense. Stated another way, the jury could not conclude that defendant was sane at the time of the commission of the offense of second degree robbery of Santiago Ramirez but insane when he personally used a firearm in the commission of that offense. Accordingly, defendant's claim that his rights were violated by the sanity jury's failure to make a finding on the firearm enhancement fails.

7

### III
### Because Defendant Possessed the Firearm Before He Used it to Rob Ramirez, the Term Imposed for Possession of a Firearm by a Felon Need Not Be Stayed

Defendant next contends that his sentence on count 3 (felon in possession of a firearm on Apr. 22, 2011) should have been stayed under section 654 because he was already punished for that crime by the 10-year enhancement imposed for firearm enhancement appended to count 2 (Apr. 22, 2011, robbery of Ramirez). We disagree.

"Section 654, subdivision (a), provides in pertinent part, '[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.' Section 654 therefore ' "precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts. 'Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor.' [Citations.] '[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.' [Citation.]" [Citation.]' [Citations.] However, if the defendant harbored 'multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct. [Citation.]' [Citations.] [¶] Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1142-1143 (*Jones*).)

8

In *Jones*, *supra*, 103 Cal.App.4th 1139, the court held that a defendant may be punished for being a felon in possession of a firearm and the offense in which he employed the weapon " ' "where the evidence shows a possession distinctly antecedent and separate from the primary offense." ' " (*Id.* at p. 1143.)  It is improper where the evidence " 'demonstrates at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense . . . .' [Citation.]" (*Id.* at p. 1144.)

Here, there is no evidence that by fortune defendant obtained the gun simultaneously with the robbery, e.g., by taking it out of the hands of a security guard (see *People v. Bradford* (1976) 17 Cal.3d 8 [§ 654 bars multiple punishment where defendant shoots officer with gun defendant wrested away from the officer moments before]).  On the contrary, the evidence supports a finding that defendant possessed the gun before he went to the church and confronted Ramirez.  Under these circumstances, multiple punishments were proper.  (*Jones, supra,* 103 Cal.App.4th at p. 1145 [holding that "section 654 is inapplicable when the evidence shows that the defendant arrived at the scene of his or her primary crime already in possession of the firearm"].)

IV

Defendant's Conviction on Either Count 3 or 4 Must Be Reversed Because Being a Felon in Possession of a Firearm Is a Continuing Offense

Defendant next contends that one of his convictions for being a felon in possession of a firearm (counts 3 & 4) must be reversed because the crime is a continuing offense, and there is no evidence he possessed two different firearms or lost possession of a single firearm between April 22 and 27, 2011.  The People agree, and so do we.

Defendant was charged with two counts of possession of a firearm by a felon: count 3 (on or about Apr. 22, 2011), and count 4 (on or about Apr. 27, 2011).  Both counts alleged the same firearm--a .380-caliber pistol.  Count 3 coincided with the robbery of Ramirez at Our Lady of Guadalupe Church in Sacramento, and count 4

9

stemmed from the incident in Midtown Sacramento where defendant was approached by Officer Msryan.

A continuing offense is not terminated by a single act or circumstance, but instead endures for as long as the proscribed conduct continues. (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 525 (*Wright*).) A continuing offense constitutes a single violation and may not be arbitrarily divided into separate time intervals and charged as multiple violations. (*People v. Keehley* (1987) 193 Cal.App.3d 1381, 1385 (*Keehley*); *People v. Gregori* (1983) 144 Cal.App.3d 353, 357.) Determining whether a crime is a continuing offense is primarily a question of statutory interpretation. (*Wright*, *supra*, 15 Cal.4th at p. 526.) It also is important to consider whether the nature of the crime is such that the Legislature " 'must assuredly have intended that it be treated as a continuing one.' " (*Ibid*.) Doubts should be resolved against a construction " 'subjecting an offender to multiple convictions by reason of a single unified pattern of behavior even though the behavior continues over a period of time.' " (*Keehley*, *supra*, 193 Cal.App.3d at p. 1385.)

Former section 12021, subdivision (a)(1)[4] provided, in pertinent part: "Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country . . . who owns, purchases, receives, or has in his or her possession or under his or her custody or control any firearm is guilty of a felony . . . ." The statutory language does not suggest an intent to treat each day of prohibited firearm possession as a new offense. Possession of any property is not a discrete event, but an ongoing condition. Courts have held other crimes based on possession to be continuing offenses. (See, e.g., *People v. Bland* (1995) 10 Cal.4th 991, 999 [possession of a controlled substance]; *Keehley*, *supra*, 193 Cal.App.3d at p. 1385 [unauthorized possession of food stamps].) We conclude that a felon's possession of a

---

[4]   Former section 12021, subdivision (a)(1) was repealed in 2012 and is now section 29800, subd. (a)(1). (Stats. 2010, ch. 711, §§ 4, 6.)

firearm is an offense that continues throughout his or her uninterrupted possession of the same weapon. Continuous possession of the same firearm supports just a single conviction.

Here, there is no evidence separating the two possessions. There is no evidence defendant possessed two different firearms or that he ceased his possession of a single firearm between April 22 and 27, 2011. Absent evidence separating the two possessions, defendant cannot be convicted of separate counts of possession of a firearm by a felon on April 22 and 27, 2011.

V

The Trial Court Impliedly Denied Defendant's Request
to Strike His Prior Prison Term Enhancements

Defendant next contends that the trial court erred in failing to rule on his request to strike the prior prison term enhancements, and that the matter should be remanded to allow the court to do so. We are not persuaded.

At the sentencing hearing, defendant's trial counsel asked the trial court to strike the two prior prison term enhancements based on defendant's cooperation and honesty in his dealing with the police and his mental state at the time of the offenses. Counsel also argued that those same factors warranted a mitigated sentence. The prosecution opposed defendant's request to strike the prior prison term enhancements and argued for an aggravated sentence. The trial court then made findings relative to the circumstances cited by the parties and set forth in the probation report and sentenced defendant.

The court's findings were as follows: "As to the circumstances in aggravation and mitigation, I do consider and will consider the defendant's early admissions as termed confessions throughout the course of the investigation as a circumstance in mitigation. [¶] And I have considered his mental status. Certainly Dr. Ferranti indicated that there was a meth-induced psychosis at the time of the crime, which is not a defense; but notwithstanding that, she also indicated that there was some other mental deficiencies,

11

and I can't say how she described that, but -- as well as the other doctor. So I'm going to consider that as a circumstance in mitigation. [¶] I also, though, have to consider the circumstances in aggravation and balance the two. [¶] Those that are stated by probation in the report are accurate with the exception of (a)(8) where they have indicated the crime was carried out in a sophisticated or professional manner. I'm not going to consider that a statement in aggravation based on the facts I heard at this trial. [¶] However, the crime did involve great violence, and violent conduct. The defendant's prior convictions, both as a juvenile and as an adult, but more specifically as an adult, are numerous. [¶] And I can't ignore the fact that he was on parole at the time that these crimes were committed and that he had been returned to prison on parole for violations multiple times, and his prior performance on probation or parole was unsatisfactory."

After setting forth its findings, the trial court sentenced defendant. As relevant to the instant claim, the trial court sentenced defendant to one year on each of the prior prison term enhancements, to be served consecutive to the rest of his sentence.

Although the trial court did not explicitly deny defendant's request to strike the prior prison term enhancements, it impliedly did so when it sentenced him on those enhancements. To the extent defendant contends a more formal ruling was required, it was incumbent upon him to obtain it. " '[Where] the court, through inadvertence or neglect, neither rules nor reserves its ruling . . . the party who objected must make some effort to have the court actually rule. If the point is not pressed and is forgotten, he may be deemed to have waived or abandoned it, just as if he had failed to make the objection in the first place.' " (*People v. Obie* (1974) 41 Cal.App.3d 744, 750 (*Obie*), quoting from Witkin, Cal. Evidence (2d ed. 1966) § 1302, p. 1205.) In *Obie,* a motion pursuant to section 995 was heard and submitted, but the record failed to show that it was ever decided. (41 Cal.App.3d at p. 749.) The court held that "[a]s the cause went to trial, it is reasonable to infer that the judge intended to deny the motion." (*Id.* at p. 750.) The same is true here. As the trial court sentenced defendant on the prior prison term

12

enhancements, it is reasonable to infer that it intended to deny the request to strike them. To the extent a more explicit ruling was required, defendant is deemed to have abandoned the request by failing to secure it.

VI

Defendant Is Entitled to Two Additional Days of Conduct Credit

Finally, defendant contends that he is entitled to two additional days of conduct credit based on the time he remained at Napa State Hospital after his competency was restored. The People agree, and so do we.

Defendant was admitted to Napa State Hospital on October 26, 2011, pursuant to section 1370. On December 22, 2011, a report was sent to the presiding judge of the Sacramento Superior Court attesting to defendant's competency to stand trial. The medical director of Napa State Hospital certified that fact on January 3, 2012, and defendant was returned to the Sacramento County Jail on January 5, 2012. The certification of defendant's competency was filed with the trial court on January 12, 2012. Defendant's credits were calculated based on the following table contained in the probation report:

| Facility | Date In | Date Out | Total Days | Comments |
|----------|---------|----------|------------|----------|
| Sacramento Main Jail | 4/27/11 | 10/26/11 | 183 | Napa State Hospital |
| Napa State Hospital | 10/27/11 | 1/5/12 | 71 | Competency |
| Sacramento Main Jail | 1/6/12 | 7/5/13 | 547 | Transfer from Hospital |

To calculate defendant's actual days in custody, the trial court added up his total days in custody, which totaled 801 days. To calculate defendant's conduct credits, the trial court subtracted the 71 days (the number of days defendant actually spent at Napa

13

State Hospital) from the 801 days he spent in custody, leaving 730 days, and then calculated 15 percent of 730 (§2933.1, subd. (c)), and arrived at 109 days of conduct credit. Thus, the trial court awarded defendant 910 days of total credit (801 plus 109).

It is well established that a defendant awaiting trial is not statutorily entitled to conduct credits for time spent in a state hospital while subject to a finding of incompetency. (*People v. Waterman* (1986) 42 Cal.3d 565, 569; *People v. Bryant* (2009) 174 Cal.App.4th 175, 182 (*Bryant*).) However, "Section 1372, subdivision (a)(1) expressly requires that, once the accused has regained competency, the medical director of the state hospital or a designee 'immediately certify that fact' by filing a certificate of restoration with the committing court. [Citation.] As in the case of a California Rehabilitation Center committed person who is not returned to local custody, equal protection principles warrant defendant be given conduct credits that would have been earned had he been returned to the county jail if a timely restoration certificate had been issued." (*Bryant, supra,* 174 Cal.App.4th at p. 184.)

Here, the medical director certified that defendant's competency had been restored on January 3, 2012, and defendant was transferred from Napa State Hospital to jail on January 5, 2012. The uncontradicted evidence, however, demonstrates that defendant's competency was unquestionably regained as of December 22, 2011. Under those circumstances, defendant is entitled to section 4019 conduct credits from December 22, 2011. (See *Bryant*, *supra,* 174 Cal.App.4th at p. 184.)

Accordingly, defendant's period of incompetency was 57 days (Oct. 27, 2011 - Dec. 22, 2011), rather than 71 days as calculated by the trial court. Thus, defendant is entitled to 111 days of conduct credit (801 minus 57 equals 744; 744 multiplied by 0.15 equals 111) for a total of 912 days of custody credit (801 plus 111 equals 912.)

DISPOSITION

The judgment is reversed and the matter remanded to the trial court with directions to (1) vacate one of defendant's convictions for being a felon in possession of a firearm

14

(counts 3 & 4), (2) resentence defendant on the remaining counts, (3) award defendant two additional days of custody credit for a total of 912 days (801 days of actual time & 111 days of conduct credit), and (4) prepare an amended abstract of judgment and forward a certified copy of the same to the Department of Corrections and Rehabilitation.

The judgment is affirmed in all other respects.


/s/
Blease, Acting P. J.

We concur:


/s/
Mauro, J.


/s/
Hoch, J.

15